UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IVETTE RIVERA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>EAST BAY MUNICIPAL UTILITY<br>DISTRICT, et al.,<br><br>                    Defendants. | Case No:  C 15-00380 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Dkt. 122, 124 |

Plaintiff Ivette Rivera ("Plaintiff") brings the instant action against her employer, East Bay Municipal Utility District ("Defendant" or "the District"), alleging claims for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; and violation of the Equal Pay Act, 29 U.S.C. § 216.  Plaintiff, a Gardener Foreman, alleges that she performs the same supervisorial duties as other male "front-line supervisors" and Assistant Superintendents in her department.  Plaintiff further alleges that, despite this, the District has refused to reclassify her as a supervisor and compensate her accordingly or allow her to become a member of the union that represents supervisors.

The parties are presently before the Court on:  (1) Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment; and (2) Plaintiff's Motion for Partial Summary Judgment.  Dkt. 122, 124.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendant's motion and DENIES Plaintiff's motion.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.      **BACKGROUND**

A.      OVERVIEW

Formed under the auspices of the Municipal Utilities District Act ("MUDA"), Cal. Pub. Util. Code §§ 11501-14403.5, the District is a public agency that provides water for 1.4 million customers in Alameda and Contra Costa Counties.  Brunson Decl. ¶ 3, Dkt. 122-4.  The MUDA specifies the adoption of a civil service system for the selection, examination, employment, classification, advancement, suspension, and discharge of employees included in the civil service system.  Id. (citing Cal. Pub. Util. Code § 12051). The Civil Service Rules implemented by the District articulate procedures for determining job classifications, job descriptions, and the interpretation of job descriptions.  Id. & Ex. 1. The District's Board of Directors ("Board") authorizes the number and character of positions at the District, as well as the salary and wages for all employees.  Id.

Plaintiff is one of two Gardener Foreman employed by the District.  Lam Decl. ¶ 5, Dkt. 122-3.  Hired in 2005, Plaintiff works in the Facilities Maintenance and Construction Division ("Maintenance Division") West work group at the Adeline Maintenance Center in Oakland, California.  Rivera Decl. ¶ 2, Dkt. 125; Lam Decl. ¶ 3.  The other Gardener Foreman is Stuart Gustafson ("Gustafson"), who is assigned to the East work group.  Lam Decl. ¶ 5; Toth Decl. ¶¶ 2-3, Dkt. 127-4.  Both individuals earn the same base pay and perform the same job duties, which are set forth in Gardener Foreman job description.[1] Brunson Decl. ¶ 16; Lam Decl. ¶¶ 4-9 & Ex. 1; Toth Decl. ¶¶ 4-9.

As Gardener Foreman, Plaintiff and Gustafson are responsible for overseeing the work of six to eight Gardeners (as defined by the District), who, in turn, maintain the landscaped areas and grounds around offices, filter plants, reservoirs and other District facilities.  Lam Decl. ¶¶ 6-7; Rivera Decl. ¶ 3; Toth Decl. ¶ 4.  They also monitor the Gardeners' workflow and attendance, approve their timesheets, conduct performance

---

[1] Plaintiff is paid $8,148.00 per month at her step level. At the same step level, a supervisor makes $9,449.00 per month.  Rivera Decl. ¶ 2; Brunson Decl. ¶¶ 16-17.

evaluations and manage the work of outside contractors.  Lam Decl. ¶¶ 6-10; Toth Decl.
¶¶ 3-8.

Gardener Foremen have no authority to discipline employees directly, and thus,
cannot issue written warnings or suspend or terminate employees.  Lam Decl. ¶ 9; Toth
Decl. ¶ 7.  Disciplinary authority is instead vested with Maintenance Superintendents Ted
Lam ("Lam") and Lisa Toth ("Toth").  Id.  A Gardener Foreman may, however, "counsel"
employees, meaning that he or she may confer with the employee about his or her
performance.  Id.  A Gardener Foreman is required to have at least one year of experience
as a Gardener II; or three years' experience in gardening, nursery work, landscaping or
closely related field, plus 6 units of related college, technical or trade school training.  Lam
Decl. Ex. 1 at 2.  A Gardener Foreman does not administer any type of apprenticeship
programs for employees in the Gardener classification.  Id.  Nor is a Gardner Foreman
required to be on emergency standby.  Id.

Plaintiff reports to Lam, the Maintenance Superintendent for the West work group.
Lam Decl. ¶ 3.[2]  Gustafson reports to Toth, the Maintenance Superintendent for the East
work group.  Toth Decl. ¶¶ 2-3.  Lam and Toth oversee a staff of 59 and 54 employees,
respectively.  Lam Decl. ¶ 4; Toth Decl. ¶ 2.  Lam directly supervises individuals in the
following classifications:  Gardener Foreman; Electrical Supervisor; Carpenter Supervisor;
Mechanical Supervisor; Instrument Supervisor; Painter Foreman; and Administrative
Secretary II.  Lam Decl. ¶ 4.  Except for the Administrative Secretary II, Toth supervises
the same classifications as Lam.  Toth Decl. ¶ 2.

The Gardener Foreman classification is represented by the American Federation of
State, County and Municipal Employees, Local 444 ("Local 444"), which is the exclusive
bargaining representative for District employees who perform skilled or unskilled trades.
Brunson Decl. ¶ 5, Dkt. 122-4.  The Gardener Foreman classification has been represented

---

[2] Lam works closely with his counterpart, Toth, in coordinating the activities of their divisions and the expectations for their direct reports.  Lam Decl. ¶ 5.  Both coordinate the preparation of performance plans in evaluating each of their direct reports so that they are evaluating employees in the same classification based on the same criteria.  Id.

1   by Local 444 since 1985, when that bargaining unit was formed, approximately 20 years

2   before the District hired Plaintiff.  Id.[3]

### B.   CLASSIFICATION DISPUTE

4   Plaintiff claims that she performs the same supervisorial duties as—but is paid less

5   than—front-line male supervisors who report to Lam in the Maintenance Division West

6   work group.  Pl.'s Mot. for Part. Summ. J. ("Pl.'s Mot.") at 1-2, Dkt. 124.  The comparator

7   positions at issue are the Electrical Supervisor, Mechanical Supervisor, Instrument

8   Supervisor, Carpenter Supervisor, and the Assistant Superintendent of Pardee and the

9   Assistant Superintendent of Aqueduct.  Lewis Decl. Ex. 6 at 9, Dkt. 122-1.  The nature of

10  those classifications and corresponding job duties are summarized below.[4]

### a)   *Electrical Supervisor*

12  The Electrical Supervisor supervises, directs and plans the work of journey and sub-

13  journey level electricians, who are responsible for maintaining, repairing, testing,

14  calibrating, and installing components of the District's high voltage and complex electrical

15  system.  Lam Decl. ¶¶ 15-19.  This supervisor classification has independent decision-

16  making responsibilities for all electrical equipment and electrical maintenance and repair

17  work at District facilities and administers a formal electrical apprenticeship program.  Id.

18  To effectively perform these duties, the Electrical Supervisor must have thorough

20  [3] Supervisors are part of the bargaining unit represented by Local 21.  Brunson Decl.
21  ¶ 7, Dkt. 122-4. The composition of a bargaining unit is determined when the unit is formed
    and obtains recognition from the District.  Id. ¶ 8.  The issue of which union will represent
22  a particular employee classification is governed by the District's Employer-Employee
    Relations Resolution.  Id.  In order to modify an established unit to include or exclude a
23  particular classification, the employee organization must file a Petition for Modification
    with the District's General Manager that meets various requirements specified in the
    Resolution.  Id.

25  [4] Plaintiff also refers to the General Grounds Foreman/Supervisor ("General
    Grounds Foreman") classification, which was eliminated by the District in 2001, four years
26  before she was hired.  Brunson Decl. ¶ 21.  Plaintiff's motion papers argue that the job
    description for General Grounds Foreman classification proves that she is performing
27  supervisorial duties.  As will be discussed in more detail below, whether Plaintiff performs
    supervisorial duties, standing alone, is insufficient to sustain her Equal Pay Act claim.
    Moreover, the General Grounds Foreman is not an appropriate comparator position in
28  connection with such a claim.

knowledge of high voltage electrical, electromechanical, electronic equipment, and the National Electric Code.  Id.  Because of the mission-critical nature of the role, the Electrical Supervisor is required to be on emergency standby every other week.  Id.  The position is authorized to issue written counseling memoranda and to directly discipline employees.  Id. ¶ 18.

### b)   Mechanical Supervisor

The Mechanical Supervisor supervises the work of journey level and sub-journey level maintenance machinists who are responsible for the maintenance, installation, repair, and monitoring of the District's industrial grade mechanical equipment that is used to treat and facilitate the distribution of water.  Lam Decl. ¶¶ 22-26.  The classification has independent decision-making responsibilities for all structural maintenance and repair work at District facilities and administers a formal electrical apprenticeship program.  Id.  To effectively perform these duties, the Mechanical Supervisor must have a thorough knowledge of industrial plumbing, as well as the installation, maintenance, operation, testing, and repair of industrial pumps, hydraulic controls and regulators and myriad other related mechanical equipment used in the operation of water distribution.  Id.  The Mechanical Supervisor is required to be on emergency standby every other week due to the mission-critical nature of the role.  Id.  The position is authorized to issue written counseling memoranda and to directly discipline employees.  Id.

### c)   Instrument Supervisor

The Instrument Supervisor supervises the work of instrument technicians, who maintain and repair recording and metering devices, control apparatus, telemetering, data logging, data display equipment, and other instruments used to measure water pressure and flow, elevation, water treatment chemical concentrations, and water quality.  Lam Decl. ¶¶ 29-32.  This position has independent technical decision making responsibilities for all instrumentation maintenance work at District facilities, and administers a formal instrument technician apprenticeship program.  Id. ¶¶ 18, 29-32.  An individual performing the duties of an Instrument Supervisor must be familiar with the National Electrical Code and have a

thorough knowledge of the installation, maintenance, operation, testing and repair of electromechanical and electronic equipment and instrumentation, as well as telemetry systems, hydraulics and mechanical linkage as related to the operation of recording and metering instruments.  Id. ¶ 31.  Id.  The Instrument Supervisor is required to be on emergency standby every other week due to the mission-critical nature of the role.  Id.  The position is authorized to issue written counseling memoranda and to directly discipline employees.  Id.

#### d)     Carpenter Supervisor

The Carpenter Supervisor supervises the work of Carpenters, who construct and maintain a wide variety of large wooden, concrete, and metal structures—such as the concrete vaults used to house and protect the District's water treatment and distribution facilities.  Lam Decl. ¶¶ 35-37.  This position has independent technical decision making responsibilities for all construction and maintenance relating to large concrete, wooden and metal structures, and administers a formal carpenter apprenticeship program.  Id. ¶¶ 18, 35-37.  An individual performing the duties of a Carpenter Supervisor must have thorough knowledge of the standard practices, methods, materials and tools of the carpentry trade including concrete work as related to field construction and maintenance of wooden and concrete structures.  Id. ¶ 36.  The position is authorized to issue written counseling memoranda and to directly discipline employees.  Id.

#### e)     Assistant Superintendent of Aqueduct/Pardee[5]

The District employs two Assistant Superintendents of Pardee and one Assistant Superintendent of Aqueduct (collectively, "Assistant Superintendents" or "Assistant

---

[5] In her interrogatory responses, Plaintiff refers to "assistant superintendents in the operations and maintenance division in 2014."  Id.  In its motion, the District construes those positions as the Assistant Superintendent of Pardee, the Assistant Superintendent of Aqueduct and the Assistant Superintendent of Water Treatment/Distribution.  Def.'s Mot. at 3-5, 10-18.  The District contends that the Assistant Superintendent of Water Treatment/Distribution position has been vacant for the last seven years, and therefore, is not a proper comparator, since Plaintiff cannot show that a male in that position performed substantially the same duties as her and received better pay.  Id. at 18.  Plaintiff does not challenge that contention.

Superintendent of Aqueduct/Pardee"), who are assigned to the District's Water Supply Division.  Wallis Decl. ¶¶ 3, 4 & Ex. 2, Dkt. 122-2.  The Assistant Superintendent of Pardee's work is focused on the Pardee and Camanche Dams, which generate hydroelectric power.  Id. ¶ 4.  The Assistant Superintendent of Aqueduct's work involves the District's system of aqueducts, three large pumping plants and five reservoirs that carry and store water and the surrounding rights-of-way.  Id.  These positions are similar and the qualifications and duties encompassed by them are set forth in a single job description.  Id.  The Assistant Superintendent classification is a second-level supervisor and supervises two to three supervisors "in power, treatment, and transportation," who, in turn, supervise multiple line staff.  Id. ¶ 5.  The Assistant Superintendent is authorized to issue written counseling memoranda and to directly discipline employees.  Id. ¶ 8.[6]

An individual performing the duties of an Assistant Superintendent must have a thorough knowledge of the principles, methods, and procedures for the construction, operation and maintenance of large pipelines and pumping facilities—as applied to hydroelectric power plant operation or water and wastewater systems.  Id. ¶ 7.  The minimum qualifications for the position also include:  at least three years of experience directing staff or subordinate employees who perform duties in the construction, operation and maintenance of major water transmission or distribution facilities or hydroelectric power plants or wastewater treatment plants; or four years of experience performing journey level construction inspection, field investigation, electric power plant operation or surveying, or engineering work related to water transmission, storage or distribution and treatment.  Id.  A qualified candidate must additionally have a Grade III Water Treatment Operator/Wastewater Treatment Operator/Water Distribution System Operator license within one year of hire, and have 60 units of college coursework upon hire.  Id.

---

[6] These Superintendent positions are not listed among the classifications that report to Lam.  Lam Decl. ¶ 4.

### C.   COMPLAINTS TO THE DISTRICT

On March 3, 2013, Plaintiff sent an email to the Human Resources department ("HR") requesting that a classification study be performed regarding her position. Rivera Opp'n Decl. ¶ 10, Dkt. 130. When a District employee believes that her position is not properly allocated (meaning the employee does not believe her classification reflects the job duties she is actually performing), the procedure to address that concern is to request that Human Resources perform a classification study, pursuant to the Civil Service Rules. Brunson Decl. ¶ 9 & Ex. 1. The goal of such a study is to determine whether an employee is performing duties outside of his or her job classification. Brunson Decl. ¶¶ 9, 11. After HR receives a request to perform a classification study, the next step is to provide the employee with a form called a "Job Audit Questionnaire," which requests specific information about the work the employee is performing. Id. ¶ 9. After the employee completes the form and returns it to HR, the analyst overseeing the study contacts the employee's supervisor to verify that the information provided by the employee is accurate. Id.

Plaintiff did not receive a response to her March 3rd email, and therefore, sent a follow up email on March 26, 2013, to Richard Jung, the Manager of Recruitment and Classification. Poore Decl. ¶ 2 & Ex. A ("Wallis Depo.") Ex. 12, Dkt. 126, 126-1; Rivera Opp'n Decl. ¶ 10. The email states, in part, "I requested a job classification study for my position on March 3 after discovering that I perform the same duties as assistant superintendents and supervisors at the District." Id. She concludes the email by asking when her classification study will commence, the name of the analyst assigned to conduct the study, and whether she will receive back pay reflecting the amount she should have received as an assistant superintendent or supervisor. Id. The record is not clear what response, if any, Plaintiff received.

On December 10, 2013, and January 14, 2014, Plaintiff appeared before the Board to complain that she was improperly classified as a non-supervisory employee and to request a classification review. Brunson Decl. ¶ 10; Rivera Opp'n Decl. ¶ 11. Shortly thereafter, the

District's Manager of Employee Relations advised Plaintiff in a written memorandum, dated January 23, 2014, that the proper mechanism to address her concerns was a classification study and expressly encouraged her to request one.  Brunson Decl. ¶ 10 & Ex. 5.

In or about June or July 2013, Laura Salangsang ("Salangsang") in HR provided Plaintiff with the form to request a classification study.  Lewis Decl. Ex. 1 ("Rivera Depo.") at 112:22-25, Dkt. 122-1; Brunson Decl. ¶ 11.  While completing the form, Plaintiff claims that the last page required her supervisor's input.  Rivera Depo. at 112:25-113:1.  She approached Lam to complete his section.  According to Plaintiff, Lam responded that he would not do so until he was authorized by HR.  Id. at 113:3-14.[7] Plaintiff complained to Salangsang that "my boss isn't cooperating," in response to which Salangsang purportedly suggested that she complete the form on her own.  Id. at 113:4-5. Plaintiff responded that she was "not going to play this game" and did not submit the form, which ended the process for seeking a classification study.  Id. at 113:6-12.

**D.    COMPLAINT TO THE EEOC AND ALLEGED RETALIATION**

On July 2, 2014, Plaintiff filed a gender discrimination complaint with the Equal Employment Opportunity Commission ("EEOC").  Rivera Opp'n Decl. ¶ 15.  Plaintiff claims that "within weeks" after submitting her complaint, Lam allegedly began "monitoring" her attendance, and shortly thereafter, gave her negative performance rating. Id.  Specifically, on August 15, 2014, Lam prepared a 2013-2014 annual performance appraisal for Plaintiff.  Lam Decl. ¶ 41 & Ex. 9.  He rated her as "Exceptional" in Jobsite Management, Quality Results, Communication and Adherence to Company Policy and Procedure; "Exceeds Expectations" in Training and Safety; and "Unsatisfactory" in Attendance.  Id. Ex. 9.

---

[7] The District claims that the standard procedure relating to the classification study request form is for HR to obtain information from a supervisor only after the employee has completed his or her section.  Brunson Decl. ¶ 11.

The unsatisfactory rating for Attendance was in accordance with the District's written guidelines used to rate employees in the Facilities Construction & Maintenance Division.  Id. ¶¶ 40-41 & Ex. 8.   In particular, those guidelines specify that employees who have used 91 or more hours of unprotected leave in a year should receive an unsatisfactory rating in Attendance.  Id.  For the 12 months covered by the performance evaluation, Plaintiff had used 112 hours of unprotected sick leave—well beyond the 91 hour threshold for an unsatisfactory rating.  Id. ¶ 41.

During the three month time period following her 2013-2014 performance review, Plaintiff continued her excessive use of sick leave and was close to exceeding her maximum sick leave for the entire year.  Id. ¶ 42.  From November 2014 through February 2015, Plaintiff had used 148.9 hours of sick leave, which placed her in the unsatisfactory range under the aforementioned guidelines.  Id. ¶ 43.  As a result, Lam gave Plaintiff a counseling memo explaining that her sick leave usage was unacceptable.  Id. & Ex. 10.  As of early May 2015, Plaintiff had used 158.9 hours of unprotected sick leave, which again placed her in the unsatisfactory range.  Id. ¶ 44.  Lam issued Plaintiff a written warning that she should reduce her use of unprotected sick leave going forward.  Id. & Ex. 11.  For reasons not stated by either party, the written warning was later retracted.  Rivera Decl. ¶ 17.

Plaintiff alleges that the unsatisfactory rating, the counseling memo and the written warning were in retaliation for her complaints to the EEOC and the Board.  Pl.'s Opp'n at 23.  Though not refuting that her use of sick leave was excessive under the District's guidelines, Plaintiff maintains that "her sick leave usage was no different than in the past, before [she] made the complaints," and that she "used sick leave to attend therapy appointments for a traumatic event that [she] suffered several years earlier."  Rivera Opp'n Decl. ¶ 17.  She claims that although Lam was "aware of this event, … he never had a problem with [her] sick leave until after [she] made complaints of gender discrimination."  Id.

Apart from the issue relating to her use of sick leave, Plaintiff alleges that Lam slowly reduced her purported supervisory duties, which she claims made it difficult to lead her crew and peers.  Id. ¶ 18.  Specifically, Lam removed Plaintiff's name as an after-hours emergency contact, and instructed her to refrain from answering work calls after hours on her work cell phone, even though such a practice allegedly was routine prior to her complaints.  Rivera Opp'n Decl. ¶ 18.  Lam acknowledges that in March 2015 he instructed her to turn off her work phone after hours, but states that the purpose of the directive was to avoid the District having to pay her overtime.  Lam Decl. ¶ 12.

Finally, Plaintiff avers that Lam "denied [her] request for a compressed day off, even though other supervisors and foremen are allowed similar schedules."  Id.  The District permits some employees to work an alternate schedule whereby they work longer hours on some days and work fewer days in the work period.  Lam Decl. ¶ 45.  The District refers to this as a "Compressed Workweek," and has a set of written Compressed Workweek Guidelines governing requests for alternate schedules.  Id.  Those rules provide that employees may change their regularly scheduled day off only "occasionally," and only with approval by their supervisor.  Id.

In the case of Plaintiff, she worked an alternate schedule, pursuant to which she worked longer hours Monday through Thursday and then had every other Friday off.  Id. ¶¶ 45-47.  In April 2015, Plaintiff asked Lam, if, instead of having every other Friday off, she could work only four hours every Friday.  Lam Decl. ¶ 47.  Lam denied the request, due to the fact that, given Gustafson's existing schedule, granting Plaintiff's request would have resulted in a four-hour time period every other Friday during which no Gardener Foreman would be on duty.  Id. ¶ 48.  Plaintiff nevertheless contends Lam's decision was discriminatory and retaliatory.  Rivera Depo. at 213:3-13.

In addition to her April 2015 request to change her schedule, Plaintiff made numerous requests to change her usual Friday off to some other day during the week.  Lam Decl. ¶ 49.  Between April 2015 and April 2016, she made fourteen such requests.  Id.; Rivera Depo. at 214:9-223:10.  Lam approved ten of those requests.  Lam Decl. ¶ 49.  He

denied the other requests because Plaintiff's requests had reached the point at which they were no longer "occasional." Id. Lam explained the reason for those denials to Plaintiff, noting that, on average, other employees were making only two such requests per year. Id. & Ex. 12.

### E. PROCEDURAL HISTORY

On January 27, 2015, Plaintiff, acting pro se, commenced the instant action against the District and several of its employees. The operative pleading before the Court is Plaintiff's Third Amended Complaint ("TAC"), which was filed by Plaintiff's subsequently retained counsel. Dkt. 88. The TAC alleges three claims for relief: (1) violation of the Equal Pay Act; (2) gender discrimination in violation of Title VII; and (3) retaliation in violation of Title VII. The District, which is the only remaining party-defendant, now moves for summary judgment on all claims. Dkt. 122. Plaintiff has filed a motion for partial summary judgment as to the issue of liability in connection with her Equal Pay Act claim. Dkt. 124. The motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law.'" Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (quoting Fed. Rule Civ. Proc. 56(c)) (citing cases). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of a genuine issue of material fact.  Id. at 324.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."   In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 322-23 (1986).  All reasonable inferences are to be drawn in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

### A.   EQUAL PAY ACT

#### 1.   Overview

The Equal Pay Act prohibits discriminatory compensation practices based on gender.  29 U.S.C. § 206(d)(1).  The plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Rizo v. Yovino, 854 F.3d 1161, 1164 (9th Cir. 2017).  To make a prima facie case of wage discrimination under the Equal Pay Act, a plaintiff must show that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974).  "The jobs to which the equal pay standard is applicable are jobs requiring equal skill in their performance. ... Skill includes consideration of such factors as experience, training, education, and ability.  It must be measured in terms of the performance requirements of the job."  29 C.F.R. § 1620.15(a).   "The … requirements that the two jobs being compared require substantially equal skill, effort, responsibility, *and* be performed under similar working conditions *are separate tests*, each of which must be met in order to state a claim under the EPA."  Stanley v. Univ. of S. Cal., 178 F.3d 1069, 1074 (9th Cir. 1999) (emphasis added).

"[U]nder the Act, the plaintiff need not demonstrate that the jobs in question are identical; she must show only that the jobs are substantially equal." Stanley, 178 F.3d at 1074.  The Ninth Circuit applies a two-step analysis for determining substantial equality. Id.  First, the court compares the jobs to determine whether they have a "common core of tasks"; that is, "whether a significant portion of the two jobs is identical." Id. (internal quotations omitted).  Second, if the plaintiff "establishes such a 'common core of tasks,' the court must then determine whether any additional tasks, incumbent on one job but not the other, make the two jobs 'substantially different.'" Id.  If the jobs involve substantial differences in skill, effort, or responsibility, or if the jobs are not performed under similar working conditions, the claim must fail.  See Forsberg, 840 F.2d at 1414.[8]

### 2.    Analysis

Plaintiff alleges that she performed substantially the same work as the comparator classifications (i.e., Electrical Supervisor, Mechanical Supervisor, Instrument Supervisor, Carpenter Supervisor, the Assistant Superintendent of Pardee and the Assistant Superintendent of Aqueduct), because, like them, she performs certain supervisorial duties. See Pl.'s Mot. at 1-10.  As will be discussed below, these are inappropriate comparators because Plaintiff's core job duties are fundamentally different.  The limited overlap in employee oversight responsibilities cited by Plaintiff is insufficient to establish a prima facie case under the Equal Pay Act.

### a)    *Substantially Equal Positions*

The District contends that the Gardener Foreman position does not share a common core of duties with any of the comparator positions.  The Court agrees.  As noted, the Equal Pay Act applies to positions requiring equal skill in their performance, including factors

---

[8] "Once the plaintiff establishes a prima facie case, the burden of persuasion shifts to the employer to show that the wage disparity is permitted by one of the four statutory exceptions to the Equal Pay Act: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'"  Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986) (quoting 29 U.S.C. § 2069(d)(1)). "These exceptions are affirmative defenses which the employer must plead and prove."  Kouba v. Allstate Ins. Co., 691 F.2d 873, 875 (9th Cir. 1982).  These affirmative defenses are not at issue in the instant motion.

such as experience, training, education, and ability.  Stanley, 178 F.3d at 1074.  As set forth in more detail above, the core duties associated with each of the comparator positions are comprised of planning and coordinating the work of skilled staff, who, in turn, are charged with maintaining the infrastructure of the District's facilities.  Those duties and concomitant qualifications for each of those classifications are trade-specific.  For example, the Electrical Supervisor, exercising his or her independent judgment, supervises the work of journey-level and sub-journey electricians, and must have a thorough knowledge of industrial electrical, electromechanical and electronic equipment.  Lam Decl. ¶ 16, 17.  The Electrical Supervisor is responsible for administering a formal electrical apprenticeship program, and may issue written warnings to employees under his or her authority.  Id. ¶¶ 16-18.  Because the Electrical Supervisor's work is considered mission-critical, he or she must be on emergency standby.  Id. ¶ 19.

In contrast to an Electrical Supervisor, the core duties of a Gardener Foreman do not include supervising skilled staff who, in turn, are responsible for performing maintenance, the installation of, or repair and calibration of high voltage electrical equipment at the District's facilities and buildings.  Id. ¶ 19.  Plaintiff is not required to independently make technical decisions pertaining to high voltage electrical equipment and electrical maintenance with respect to the District's buildings and facilities. Id.  Unlike the Electrical Supervisor, she does not administer any apprenticeship program for the staff she oversees. Id.  She also lacks the power to independently issue written warnings to employees, and is limited to conducting informal coachings and is only required to report employee misconduct to her employer.  Id. ¶ 20.  Plaintiff also is not required to be on emergency stand-by.

The distinctions summarized above hold true for all of the comparator classifications.  In each case, each of the comparator classifications imposes duties on the incumbent to exercise independent judgment in assigning, directing, overseeing and evaluating the work of their staff, who, likewise, are skilled in their particular trade.  Lam

Decl. ¶¶ 16, 18, 23, 24, 30, 31, 36, 37; Wallis Decl. ¶¶ 5-7, 11, 12.[9]  The same is not true of a Gardener Foreman.  Lam Decl. ¶¶ 20, 21, 27, 28, 33, 34, 38, 39; Wallis Decl. ¶¶ 13, 14.  Moreover, a Gardener Foreman has more limited staff oversight and cannot independently take disciplinary action.  Lam Decl. ¶¶ 18, 24, 31, 37 & Ex. 1 at 2; Wallis Decl. ¶ 12.  Finally, and importantly, there is no evidence presented by Plaintiff demonstrating that she performs her duties of overseeing Gardeners under similar working conditions as any of the comparator positions.

For her part, Plaintiff does not present any probative evidence showing that "a significant portion" of her job and the comparator positions "is identical."  Stanley, 178 F.3d at 1074.  Nor does she dispute any of the District's evidence that the requisite experience, training, education, and ability to perform the duties of the comparator classifications are fundamentally different from those of a Gardener Foreman.  Pl.'s Opp'n at 16.  Rather, Plaintiff relies on a classification study from 2015 which supposedly proves that a Gardener Foreman and unspecified "trades supervisors" share the same supervisorial duties.  That study, entitled "Classification Equity Study for the Maintenance Supervisor Classification" ("Classification Study"), was prepared by the District in February 2015.  Poore Decl. Ex. 1 ("Wallis Depo.")  Ex. 11.  The Classification Study was prepared as part of a resolution reached by the District and Local 21 (the bargaining unit representing supervisors) regarding whether three Maintenance Supervisor incumbents within the Water Supply Division of the Water Operations Department were properly classified.  Wallis Depo. Exs. 10, 11.  The District and Local 21 resolved the matter by entering into a Memorandum of Understanding ("MOU"), which required that "[t]he job classification of Maintenance Supervisor will be studied to determine whether the incumbents are classified appropriately."  Id. Ex. 10.

In the course of its analysis, the Classification Study notes that "District trades supervisors" share the five "commonalities" consisting of:  (1) supervising of crew

_____

[9] The supervisor classifications supervise trade specific employees, why the Assistant Superintendent classification supervises lower level supervisors.  Id.

members; (2) coordinating of projects with other entities or work units; (3) monitoring expenses; (4) overseeing repairs; and (5) preparing specifications for proposals.  Id. at 2.[10] Seizing upon that observation, Plaintiff asserts that she also performs those duties, and therefore, should be classified as a supervisor.  Pl.'s Mot. at 7-9.[11] This contention lacks merit.  As an initial matter, the District properly objects to the statement in the Classification Study as hearsay.  Fed. R. Evid. 801(c); Anheuser-Busch, Inc. v. Nat'l Beverage Distribs., 69 F.3d 337, 345 n.4 (9th Cir. 1995) ("In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment.").  Accordingly, the District's objection is sustained.  Harkins Amusement Enters., Inc. v. General Cinema Corp., 850 F.2d 477, 490 (9th Cir. 1988).[12]

The District also objects to the Classification Study on the ground that it is unauthenticated.  Documents that are not properly authenticated may not be considered on a motion for summary judgment.  Orr, 285 F.3d at 773 (holding that authentication of documents is a condition precedent to their consideration on a summary judgment motion); Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011) ("unauthenticated documents cannot be considered in a motion for summary judgment").  Here, there is no evidence that Wallis authored the study and he was not asked to explain it.  Wallis Depo. at 55:4-56:13.  The District's objection for lack of authentication is therefore sustained.

---

[10]  As to Maintenance Supervisors specifically, the study identified several responsibilities unique to their position, such as operational control of the various the District aqueducts and pumping plants, and maintaining "a high number of licenses in order to support operational responsibilities."  Id. at 3.

[11] Though not entirely clear, Plaintiff appears to suggest that the Study's reference to "District trades supervisors" includes each of the comparator classifications.  The Study, however, does not state as such.

[12] It is true that a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.  JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1110 (9th Cir. 2016).  But here, Plaintiff has not identified any hearsay declarants that would be available to testify at trial, or that the hearsay evidence would be admissible at trial in some other form.

Even if the Classification Study could properly be considered, it simply is not germane.  The salient issue is not—as Plaintiff contends—whether she was performing supervisorial duties.  Rather, for purposes of the Equal Pay Act, the critical question is whether the core duties of comparator positions are substantially equal to Plaintiff's. Stanley, 178 F.3d at 1074.  That inquiry, in turn, focuses on whether "a significant portion" of Plaintiff's job duties "is identical" to the job duties of each of the comparator classifications.  Id.  The Classification Study is not probative of that issue.  The mere fact that some of her employee oversight responsibilities overlap on some level with those of unspecified "trades supervisors" is insufficient to demonstrate that Plaintiff and comparator classifications shared a common core of tasks.  See Gunther v. Washington Cty., 623 F.2d 1303, 1309 (9th Cir. 1979) (noting that it is "the overall job, not its individual segments, that must form the basis of comparison").

Even if Plaintiff were correct in asserting that the Classification Study proves that she and the comparator positions perform the same five core duties, her Equal Pay Act claim still fails.  Under the second part of the test for determining whether jobs are substantially equal, the court must evaluate whether the comparator classifications entail "additional tasks [that] … make the two jobs 'substantially different.'" Stanley, 178 F.3d at 1074 (citation omitted).  Here, the record establishes that individuals in the comparator classifications spend the majority of their time performing tasks which Plaintiff does not and is not qualified to perform.  Lam Decl. ¶¶ 15-39; Wallis Decl. ¶¶ 3-5.  The comparator positions entail additional duties not imposed on a Gardener Foreman; namely, the installation, maintenance and repair of the District's complex array of electrical, mechanical and water quality equipment, physical structures and facility, or dams and aqueducts.  In addition, the supervisor positions require the incumbent to be on emergency standby, lead apprenticeship classes and discipline employees, none of which is required of a Gardener Foreman.  Id. ¶¶ 20, 27, 33, 38.  These additional duties render the Gardener Foreman's job "substantially different" from the comparator positions.

1

### b) *General Grounds Foreman*

2

Equally misplaced is Plaintiff's reliance on the job description for the now-

3

eliminated General Grounds Foreman position to establish that the Gardener Foreman

4

position is, in fact, a supervisorial position.  Pl.'s Mot. at 3-4.  According to Plaintiff,

5

"the Gardener Foreman position that reported to the Adeline Maintenance Center was

6

previously titled the 'General Grounds Foreman' classification, and, according to the

7

position descriptions, the two jobs were identical."  Id. at 3 (citing Wallis Depo. Ex. 14,

8

15); Rivera Decl. ¶ 4.  Without any citation to the record, Plaintiff then asserts that the

9

General Grounds Foreman classification was a supervisory position that was later

10

reclassified as a Gardener Supervisor in 2000.  Pl.'s Mot. at 9.  She further claims that, at

11

some point prior to her hiring in 2005, the Gardener Supervisor was renamed "Gardener

12

Foreman."  Id.

13

This argument fails on multiple levels.  First, as noted, the issue is not whether

14

Plaintiff should be classified as a supervisor—but whether she did not receive equal pay for

15

substantially equal work performed by a male District employee.  Second, Plaintiff fails to

16

present any evidence to support her contention that the Gardener Foreman and General

17

Grounds Foreman classification are one in the same.  To the contrary, the record evidence

18

shows that the Gardener Foreman and General Grounds Foreman positions co-existed until

19

2001, at which time the latter position was eliminated by the District.  Brunson Decl. ¶¶ 5-

20

6, 14.  The General Grounds Foreman was deemed to be a supervisor position, while the

21

Gardener Foreman position was not.  Brunson Decl. ¶¶ 5-6 & Ex. 2 at 3, 21-22.  Finally,

22

Plaintiff presents no evidence of the duties actually performed by a General Grounds

23

Foreman.  She also ignores that the duties listed in the General Grounds Foreman job

24

description are described as "examples" and "illustrative only."  Wallis Depo. Ex. 14 at 1;

25

id. Ex. 15 at 1.  In short, Plaintiff's arguments and evidence regarding the General Grounds

26

Foreman are not probative of whether the District violated the Equal Pay Act.

27

28

*c)*     ***Summary***

Plaintiff has failed to raise a genuine issue of material fact regarding whether she performed substantially the same work as males working in any of the comparator classifications.  The evidence presented by the District, which is uncontroverted by Plaintiff, demonstrates that the duties of a Gardener Foreman and the comparator classifications do not require substantially the same skill, effort and responsibilities.  The comparator positions also include additional responsibilities that render them substantially different from that of a Gardener Foreman.  Moreover, even if the subject classifications were substantially the same, there is no evidence that they were performed under similar working conditions.  Because Plaintiff has not established a prima facie case, the District is entitled to summary judgment on Plaintiff's Equal Pay Act claim.

## B.     GENDER DISCRIMINATION

Plaintiff alleges that the District discriminated against her on the basis of her gender by engaging in the following acts:  (1) failing to pay her equally to other supervisors; (2) denying her request to be reclassified as a supervisor; and (3) denying her request to be moved to the supervisors' union, Local 21.  Pl.'s Opp'n at 19.

Title VII provides that employers may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  To sustain a Title VII discrimination claim, the plaintiff must establish that her protected status was the "motivating factor" for the defendant's adverse employment action.  42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B); see Desert Palace, Inc. v. Costa, 539 U.S. 90, 101-102 (2003).

To survive summary judgment, a plaintiff must "create a triable issue of fact regarding discriminatory intent."  Pac. Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1158 (9th Cir. 2013).  Discriminatory intent can be shown through "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the adverse action.  Pac. Shores Props., 730 F.3d at 1158.  Direct evidence is

"evidence which, if believed proves the fact [of discriminatory animus] without inference or presumption."  Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003), as amended (Jan. 2, 2004).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1039 (9th Cir. 2005).  Circumstantial evidence, on the other hand, "is evidence that requires an additional inferential step to demonstrate discrimination."  Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005).  Alternatively, in lieu of direct or circumstantial evidence, a plaintiff may rely on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Pac. Shores Properties, 730 F.3d at 1158.

Plaintiff relies on the McDonnell Douglas approach.  Pl.'s Opp'n at 18-22.  Under that framework, the plaintiff must first establish a prima facie case of discrimination by showing that:  (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably.  Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008).  If a plaintiff establishes a prima facie case, the burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct."  Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).  Finally, if the employer articulates a legitimate reason for its action, "the employee must then prove that the reason advanced by the employer constitutes a pretext for unlawful discrimination."  Diaz, 521 F.3d at 1207.  Regardless of who bears the burden of production, the employee always retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee.  Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1982).

### 1.    Prima Facie Case

#### a)    *Similarly Situated*

The only element of Plaintiff's prima facie case in dispute is the fourth element; i.e., that similarly situated males were treated more favorably.  Def.'s Mot. at 23.  To meet this

requirement, Plaintiff must show that the male employees whom she claims were treated more favorably were "similarly situated in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). Here, the District contends that the person most similarly-situated to Plaintiff is Gustafson (the other Gardener Foreman employed by the District) and that both Plaintiff and Gustafson are treated equally. The evidence supports the District's position. Both individuals perform the same duties, are at the same step on the applicable salary schedule and receive the same base pay rate. Brunson Decl. ¶¶ 5, 14, 16; Toth Decl. ¶ 9. For her part, Plaintiff does not contend or present any evidence that she is not similarly situated to Gustafson or is otherwise treated less favorably than him. Plaintiff's failure to demonstrate that she was treated less favorably than Gustafson is, standing alone, fatal to her Title VII discrimination claim. Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2004) (upholding grant of summary judgment where employee failed to show that similarly-situated employees were treated more favorably).

Completely ignoring the District's arguments and evidence regarding Gustafson, Plaintiff instead contends that she is similarly-situated to—and is treated differently than—male supervisors in the Maintenance Division. Pl.'s Opp'n at 18-19. As an initial matter, this contention is foreclosed by the Court's finding to the contrary in connection with her Equal Pay Act claim. As discussed in more detail above, each of the comparator classifications is fundamentally distinct from the Gardener Foreman classification. As such, Plaintiff is, by definition, not similarly situated to the male supervisors in those classifications. See Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct"); see Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004) (holding that "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer").

1

2

### b)      *Treated Less Favorably*

i.      <u>Classification Studies for Male Employees</u>

3

Even if Plaintiff were similarly situated to the comparator classifications, she has not

4

presented any evidence that she was treated less favorably.  In her opposition, Plaintiff

5

argues that "[the District] agreed to conduct classification studies for three male mechanical

6

supervisors in 2013 and 2014, yet it refused to conduct a similar classification study for

7

Plaintiff."  Pl.'s Opp'n at 19, 21.  She further contends that "[the District"] conducted a

8

classification study for the male Gardeners in Plaintiff's unit, but it refused to do so with

9

respect to Plaintiff."  <u>Id.</u> at 19.  Neither of these claims is supported by any citation to the

10

record.  Plaintiff's unsubstantiated claim of disparate treatment is therefore insufficient to

11

demonstrate a genuine issue of material fact.  <u>See</u> Fed. R. Civ. P. 56(c)(1)(A) (requiring

12

that the non-movant "cit[e] to particular parts of materials in the record" to demonstrate the

13

presence of a genuine factual dispute); <u>Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925,

14

929 (9th Cir. 2003) (holding that a court need not consider arguments unsupported by

15

citations to the record).

16

The above notwithstanding, the Court has independently reviewed the documents

17

submitted in support of Plaintiff's opposition; namely, Plaintiff's declaration and transcripts

18

from the Lam and Wallis depositions.  In none of those documents is there any mention of a

19

2013 or 2014 classification study for three male mechanical supervisors.  Indeed, the only

20

evidence in the record of a classification study is the 2015 Classification Study for the

21

Maintenance Supervisor classification which was discussed above in connection with

22

Plaintiff's Equal Pay Act claim.  As noted, the 2015 Classification Study resulted from a

23

negotiated agreement between the District and Local 21, as opposed to a routine request for

24

a classification review submitted by male supervisors to HR.  Wallis Depo. Ex. 11 at 2.

25

Thus, there is no evidence that, in similar circumstances, the District granted requests for

26

classification studies for male supervisors in the Maintenance Division, but not for Plaintiff.

27

28

ii.     Plaintiff's Request for a Classification Study

There also is a dearth of evidence to support Plaintiff's ancillary claim that the District refused *her* request for a classification study.  While Plaintiff was entitled under the Civil Service Rules to request such a classification review, she also was required to tender the request by submitting a completed Job Audit Questionnaire to HR.  Brunson Decl. ¶ 9. Plaintiff admittedly received the requisite request form, but never completed or submitted it to HR.  Lewis Decl. Ex. 1 ("Rivera Depo.") at 137:15-138:12; Brunson Decl. ¶¶ 9-11. Plaintiff counters that she was told that a verbal request for a classification study was sufficient to trigger one, and that she, in fact, made such a request to the District.  Pl.'s Opp'n at 20.[13]  As support, she contends that Lam and Wallis "admitted" during their respective depositions that "all Plaintiff needed to do is ask for a classification study, in order to trigger review of her job."  Id.  However, Plaintiff's opposition again fails to provide any citations to the record to support that assertion.  See Fed. R. Civ. P. 56(c)(1)(A); Indep. Towers of Wash., 350 F.3d at 929.

Setting aside Plaintiff's failure to provide citations to the record, the Court's independent review of the Lam and Wallis deposition transcripts reveals that Plaintiff has mischaracterized their testimony.  Neither Wallis nor Lam stated that a verbal request was sufficient to commence a classification review.  To the contrary, both individuals testified that they were unfamiliar with the procedures for seeking a classification review because such matters are handled by HR.  Wallis Depo. at 51:22-23:14; Lam Depo. at 21:21-22:7. Lam further added that he advised Plaintiff to bring her request for reclassification to HR. Lam Depo. at 67:12-18.  When asked whether speaking to that department was "the equivalent of constituting a request for a [classification] study," Lam said, "I don't know."

---

[13] In the declaration submitted by Plaintiff in opposition to Defendant's summary judgment motion, Plaintiff claims that she was never informed by anyone from the District that she needed to complete any paperwork to request a classification study.  Rivera Decl. ¶ 10.  This contradicts her sworn deposition testimony wherein she acknowledged receiving the request form from HR and understood that it was necessary to complete the form. Rivera Depo. at 112:22-113:4.  A party cannot create an issue of fact by contradicting her own deposition testimony.  Van Asdale v. International Game Tech., 577 F.3d 989, 998 (9th Cir. 1991).

Id. at 67:16-18.  Plaintiff disputes the veracity of Lam's lack of knowledge and points out that he was the District's designated Rule 30(b)(6) witness.  Pl.'s Opp'n at 19.  However, Plaintiff's criticism is misplaced, given that decisions regarding classification studies were not among the topics designated in Plaintiff's Rule 30(b)(6) deposition notice.  Lam Depo. Ex. 2, Dkt. 139.

As an alternative matter, Plaintiff contends that she, in fact, submitted a classification study "*in writing* on several occasions in 2013 and 2014, and that Defendant's own documents show that [she] requested such a study."  Pl.'s Opp'n at 20 (citing Wallis Depo. Exs. 3, 12) (emphasis added).[14]  But whether or not she made such a request is entirely beside the point.  The District will conduct a classification review upon the employee's submission of a completed Job Audit Questionnaire, which Plaintiff refused to do.  Brunson Decl. ¶ 9; Rivera Depo. at 113:6-12; Brunson Decl. ¶ 11.  Plaintiff posits that she attempted to complete the request form, but was thwarted by Lam.  In particular, Plaintiff claims in her declaration filed in support of her opposition that Lam refused to complete his section of the form, as "HR had instructed him to have no further contact or communications with [her] about [her] attempts to seek reclassification to a supervisor." Rivera Opp'n Decl. ¶ 10.

Plaintiff's allegation that Lam interfered with her efforts to submit a completed Job Audit Questionnaire to HR is unsupported and does not establish a genuine issue of material fact.  See Van Asdale, 577 F.3d at 998.  During her deposition, Plaintiff made no mention of Lam refusing to complete his section of the form because HR had instructed him not to do so.  Rather, Plaintiff quotes Lam as stating, "'I am not touching that [i.e., the form] until I get authorization from HR'" and that "'[u]ntil I get authorization from HR, I'm not involved in that process.'"  Rivera Depo.  at 113:9-14.  Notably, the statements

---

[14] Plaintiff cites Exhibit 3 to the Wallis deposition, which is a memorandum from District General Manager Alexander Coate to the Board, dated January 9, 2014, pertaining to Plaintiff's claim at the December 10, 2013 Board meeting that she has been misclassified.  Wallis Depo. Ex. 3.  Exhibit 12 is an email from Plaintiff, dated March 26, 2013, to Richard Jung, the Manager of Recruitment and Classification.  Wallis Depo. Ex. 12.

attributed to Lam by Plaintiff during her deposition are consistent with the District's procedure for conducting classification reviews; that is, after the employee submits the completed form to HR, the analyst handling the matter contacts the employee's supervisor to verify that the information provided by the employee is accurate.  Brunson Decl. ¶ 9.

But even if there were evidence that the District and Lam undermined Plaintiff's ability to properly request a classification review—which there is not—Plaintiff's argument still fails.  For purposes of establishing a prima facie case of gender discrimination, Plaintiff must show that she was treated less favorably than similarly situated males.  In other words, Plaintiff must demonstrate that the District conducted classification reviews for similarly-situated male employees who failed to submit the requisite request form to HR.  No evidence to that effect has been proffered in this case.

### c)    *Legitimate, Nondiscriminatory Motive*

Even if Plaintiff could establish a prima facie case of discrimination, her claim fails because the District has offered legitimate, nondiscriminatory reasons for its actions.  As noted, Plaintiff alleges that the District discriminated against her by paying her less than male supervisors.  She also claims that the District denied her requests to be reclassified as a supervisor and become a member of Local 21 (i.e., the union for supervisors).  The District has proffered evidence—which is uncontroverted by Plaintiff—that it had legitimate business reasons for its conduct.  Indeed, Plaintiff's opposition makes no attempt to respond to the District's arguments and evidence in this regard.

Turning first to Plaintiff's claim of unequal pay, the record confirms that Gardener Foremen, including Plaintiff and Gustafson, are compensated in accordance with a salary schedule.  Brunson Decl. ¶¶ 13-14.  Both receive the same base compensation.  Id.[15] Though Plaintiff claims that she should be paid commensurate with male *supervisors* and *Assistant Superintendents* in the comparator classifications, the fact remains that the

---

[15] "Title VII and the Equal Pay Act overlap because both make unlawful differentials in wages on the basis of a person's sex."  Maxwell v. City of Tucson, 803 F.2d 444, 446 (9th Cir. 1986).

Gardener Foreman classification is *not* considered supervisorial.  Additionally, the comparator positions have far more stringent duties and hiring requirements as compared to a Gardener Foreman.  See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1048-49 (5th Cir. 1996) (recognizing that evidence of more experience in a particular position is a legitimate, nondiscriminatory reason for a pay differential).

Similarly, the District has shown that its alleged decisions not to reclassify Plaintiff as a supervisor or permit her to join Local 21 were not based on her gender.  As explained above, the matter of reclassification was not explored by the District as a result of Plaintiff's failure to comply with the District's procedure for requesting a classification review.  Likewise, the District does not control which union represents a particular classification.  During the formation of the bargaining unit over twenty years ago—well before Plaintiff was hired—the District and Local 444 agreed that the Gardner Foreman position would be part of Local 444, the representative for non-supervisory employees. Brunson Decl. ¶ 6.  The District has not sought to move the Gardener Foreman from Local 444 to Local 21 because neither of those bargaining units requested a unit modification under the Employer-Employee Relations Resolution, which is the only process to effect such a change.  Id. ¶¶ 8, 11 & Ex. 4.  The Court is satisfied that the District has provided legitimate, non-discriminatory reasons for the actions challenged by Plaintiff.

### d)   *Pretext*

As set forth above, the District has shown that it had a legitimate, legally permissible reason for its decisions, which thereby shifts the burden to Plaintiff to show that the District's proffered reasons for the District's refusal to classify her as a supervisor are a pretext for discrimination.  Vasquez, 349 F.3d at 642.  To demonstrate pretext, Plaintiff "must put forward specific and substantial evidence challenging the credibility of the employer's motives."  Id.  Plaintiff presents several arguments in an attempt to establish pretext, none of which are compelling.

First, Plaintiff challenges the District's explanation for not conducting a classification review, claiming that Wallis and Lam testified that a verbal request would

have been sufficient to trigger a classification review.  Pl.'s Opp'n at 20.  As set forth above, the record does not support that contention.

Second, Plaintiff disputes the District's purported assertion that it "could not reclassify [her] as a 'supervisor' with placement in Local 21" because reclassification "must be initiated by the union through a petition and competitive process."  Pl.'s Opp'n at 21.  Plaintiff asserts that the District's position is "false" and contradicted by Wallis' deposition testimony.  Id.[16]  In advancing this argument, Plaintiff misconstrues the District's position.  The District readily acknowledges that it has the discretion to reclassify a position as supervisory.  However, the matter of which union will represent a particular classification is governed by the District's Employer-Employee Relations Resolution, which requires that the union file a petition for modification.  Brunson Decl. ¶ 8.  Thus, the Gardener Foreman classification was not transferred to Local 21 because there was no effort on the part of either Local 444 or Local 21 to do so.  Brunson Decl. ¶¶ 8, 11.

Third, Plaintiff claims that the District refused to conduct a workplace investigation in response to her complaints to the Board in 2013 and 2014, "even though Defendant has admitted that it has an obligation to conduct such internal workplace investigations."  Pl.'s Opp'n at 21.  Plaintiff's opposition fails to provide any citations to the record to support that assertion.  See Fed. R. Civ. P. 56(c)(1)(A); Indep. Towers of Wash., 350 F.3d at 929.

Fourth, Plaintiff argues that "statistical evidence" shows that the District has a "pattern and practice of failing to advance female employees to managerial or supervisory ranks" in her division.  Pl.'s Opp'n at 21-22.  However, there is no claim for failure to advance or promote alleged in the pleadings.  When issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, a district court should construe the matter raised as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time.  Desertrain v. City of Los Angeles, 754

---

[16] During his deposition, Wallis testified that, under § 6.5 of the 2013 Memorandum of Understanding between the District and Local 444, the union recognized the District's right to create new and amend existing job classifications.  Wallis Depo. at 83:21-84:4 & Ex. 23.

F.3d 1147, 1154 (9th Cir. 2014).  Here, permitting Plaintiff to pursue a new claim, which appears to be unexhausted, after the close of discovery would be prejudicial to the District and therefore will not be allowed.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292-93 (9th Cir. 2000).

In any event, Plaintiff's "statistical evidence" is inapposite.  The evidence cited by Plaintiff is Exhibit 2 to the Wallis deposition, which consists of a chart listing the names and genders of all managerial or supervisory employees in the Operations and Maintenance Department for the last five years.  Wallis Depo. 15:7-16:25, 18:21-19:16.  Plaintiff claims that the chart shows the percentage of males versus female employees in supervisory and non-supervisory positions.  Pl.'s Opp'n at 21-22.  Despite Plaintiff's representations to the contrary, the list contains no statistics, totals, calculations or comparisons.  Pl.'s Not. of Errata Ex. 2, Dkt. 139-2.  In addition, the purported breakdown between male and female managers in Plaintiff's department, by itself, does not create a triable issue of material fact. For a reasonable fact finder to infer discrimination, the evidence must present a "stark pattern" and account for "nondiscriminatory variables." Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 663 (9th Cir. 2002).  Plaintiff's "statistical evidence" does neither.

### e)  *Summary*

The Court finds that Plaintiff has failed to establish a prima facie case of gender discrimination.  The most similarly situated male working at the District is Gustafon, the other Gardener Foreman.  However, Plaintiff does not claim, nor is there any evidence that, she is treated less favorably than him.  As for the male front-line supervisors in the Maintenance Division, the Court rejects Plaintiff's contention that she is similarly situated to or treated less favorably than them.  Even if Plaintiff could make out a prima facie case, the District has presented legitimate, non-discriminatory reasons for its actions.  Finally, all of Plaintiff's allegations of pretext fail, as a matter of law.  The District is therefore entitled to summary judgment on Plaintiff's claim for gender discrimination under Title VII.

## C.    RETALIATION

Title VII prohibits retaliation against a person who has exercised his rights under the Act by claiming discrimination or seeking to enforce its provisions.  42 U.S.C. § 2000e-3(a).  A retaliation claim is subject to the McDonnell Douglas burden-shifting framework.  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  A plaintiff must first establish a prima facie case of discrimination by showing that "(1) [she] engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action."  Id. at 1093-94.  "If [the plaintiff] provides sufficient evidence to show a prima facie case of retaliation, the burden then shifts to the [defendant] to articulate a legitimate, non-retaliatory reason for its actions."  Porter v. California Dep't of Corr., 419 F.3d 885, 894 (9th Cir. 2005).  Once the defendant has presented a legitimate purpose for the action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is "merely a pretext for a retaliatory motive."  Id.

### 1.    Attendance Issues

The pleadings allege that the District retaliated against Plaintiff "for making internal complaints about gender discrimination and unequal pay," TAC ¶ 31, but fails to specifically identify the actions that she contends are retaliatory.  In her opposition, however, Plaintiff clarifies that, after she complained about discrimination, Lam allegedly began monitoring her attendance and "gave her an unsatisfactory rating on her performance evaluation for attendance, and provided a disciplinary counseling memorandum, and a written warning for attendance."  Pl.'s Opp'n at 23.  As to that claim, the District contends that it had a legitimate, non-retaliatory reason for negatively evaluating her attendance:  She used excessive sick leave beyond the limits allowed by the District's guidelines during the review period germane to her 2013-2014 annual performance appraisal and the time period thereafter.  Lam Decl. ¶¶ 41-44.

Plaintiff does not dispute that she used an excessive use of sick leave during the relevant time periods.  She also does not dispute that the District was well within its

1  authority to rate her attendance negatively and to take disciplinary action based on her

2  failure to adhere to the District's guidelines for using sick leave.  Nonetheless, Plaintiff

3  asserts that the District's explanation is pretextual.  Specifically, Plaintiff avers that "her

4  sick leave usage was no different than in the past, before [she] made the complaints," and

5  that she "used sick leave to attend therapy appointments for a traumatic event that [she]

6  suffered several years earlier."   Rivera Decl. ¶ 17.  She further asserts that Lam was "aware

7  of this event, … he never had a problem with [her] sick leave until after [she] made

8  complaints of gender discrimination."  Id.

9          Evidence of pretext must be both "substantial and specific evidence."  Bergene v.

10  Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1142 (9th Cir. 2001)

11  (noting that to avoid summary judgment on a retaliation claim, "[c]ircumstantial evidence

12  of pretext must be specific and substantial"); accord Aragon v. Republic Silver State

13  Disposal Inc., 292 F.3d 654, 663 (9th Cir. 2002).  Plaintiff's evidence is neither.  The only

14  evidence of pretext presented by Plaintiff consists of conclusory statements in her

15  declaration that the amount of her sick leave "was no different than in the past."  Rivera

16  Opp'n Decl. ¶ 15, 16.  That vague statement is devoid of any details, such as the specific

17  timeframe to which she is referring or the amount of sick leave that she utilized prior to

18  complaining to the EEOC or the Board.  Nor are there any details provided regarding

19  Plaintiff's assertion that she used sick leave for "therapy appointments for a traumatic

20  event." Plaintiff's sparse and conclusory evidence of pretext is insufficient to avoid

21  summary judgment.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.

22  2002) ("The district court was on sound footing concluding that [plaintiff] put forward

23  nothing more than a few bald, uncorroborated, and conclusory assertions rather than

24  evidence."); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001)

25  ("[T]he district court was correct in determining that there was no genuine issue of material

26  fact.  A plaintiff's belief that a defendant acted from an unlawful motive, without evidence

27  supporting that belief, is no more than speculation or unfounded accusation about whether

28  the defendant really did act from an unlawful motive").

1

### 2.    Denial of Scheduling Modification Requests

2    Plaintiff next asserts that the District retaliated against her by refusing her request to

3    modify her work schedule.  This contention is presented only briefly in Plaintiff's

4    opposition and is unsupported by any substantive analysis or legal authority.  Compare Pl.'s

5    Opp'n at 3, 5 with id. at 23-24.  The Court need not consider arguments that are

6    inadequately briefed, as is the case here.  See Indep. Towers of Wash., 350 F.3d at 929-30.

7    That aside, there is insufficient evidence for Plaintiff to avoid summary judgment on this

8    claim.  The only evidence provided by Plaintiff regarding scheduling issues is a statement

9    in her declaration that:  "Lam also denied my request for a compressed day off, even

10   though other supervisors and foremen are allowed similar schedules."  Rivera Decl. ¶ 18.

11   Though not entirely clear, it appears that Plaintiff is referring to a request she made on

12   April 16, 2015, to work four hours every Friday, instead of having every other Friday off.

13   Lam Decl. ¶ 47.  Lam denied her request due to existing scheduling conflicts.  At that time,

14   Gustafson, the other Gardener Foreman, also worked a compressed work week such that his

15   regular Friday off was the opposite of Plaintiff's regular Friday off.  Id.  Plaintiff's

16   proposed schedule would therefore have created a four-hour period every other Friday

17   during which no Gardener Foreman was on duty.  Id.[17]  Plaintiff offers no argument or

18   evidence challenging the legitimacy of Lam's reason for declining her April 16, 2015,

19   request to modify her schedule or otherwise demonstrating that the District's explanation is

20   pretextual.

### 3.    Reduction of Work Duties

22   Finally, Plaintiff claims that, "immediately after Plaintiff made her complaint to the

23   Board in 2014, … Lam slowly reduced Plaintiff's supervisory duties."  Pl.'s Opp'n at 12.

24   In her declaration, Plaintiff asserts that Lam removed her name as an after-hours emergency

25

26   _____

[17] Plaintiff also ignores the fact that Lam granted ten of her fourteen requests for
27   scheduling modifications, even though, on average, other employees were making only two
such requests per year.  Lam Decl. ¶ 49 & Ex. 12.  Lam reasonably denied Plaintiff's
28   remaining four requests because Plaintiff's requests had reached the point at which they
were no longer "occasional."  Id.

contact and instructed her not to take emergency calls after hours.  Rivera Opp'n Decl.

¶ 18, Dkt. 18.  Again, Plaintiff's contention that Lam retaliated against her in this manner is

mentioned only in passing, and is not discussed in the section of her opposition relating to

her retaliation claim or elsewhere in her brief.  See Pl.'s Opp'n at 3, 12.  Therefore, this

argument is not properly before the Court.  Indep. Towers of Wash., 350 F.3d at 929-30.

The claim of retaliation also fails on the merits.  Where, as here, a causal nexus is to

be inferred purely from the temporal proximity between a protected activity and an adverse

action, a plaintiff must show a "very close" temporal proximity.  Clark Cnty. Sch. Dist. v.

Breeden, 532 U.S. 268, 273-74 (2001) (citing cases for the proposition that a three-month

and four-month time lapse is insufficient to infer causation); accord Manatt v. Bank of Am.,

N.A., 339 F.3d 792, 802 (9th Cir. 2003).  Plaintiff claims that the retaliation began

"immediately," but fails to provide any specific facts to support that assertion.

The only evidence regarding temporal proximity is, ironically, from the District,

which notes that, in March 2015, Lam instructed Plaintiff to turn off her cellphone when

she is off duty in order to avoid incurring overtime.  Lam Decl. ¶ 12.  Plaintiff appeared

before the Board in January 2014, which is fourteen months prior to the alleged retaliatory

conduct.  Brunson Decl. ¶ 10; Rivera Opp'n Decl. ¶ 11.  Without additional evidence of

retaliatory motive, a fourteen month gap between the District's knowledge of the protected

activity and the retaliatory action is too remote to constitute circumstantial evidence of

retaliation.  See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035 (9th

Cir.2006) (finding that a seven-month gap between an employee's complaint and an

allegedly retaliatory employment conduct was too great to support an inference of

causation); Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) ("While courts

may infer causation based on the proximity in time between the protected action and the

allegedly retaliatory employment decision, such an inference is not possible in this case

because approximately nine months lapsed between the date of [plaintiff]'s complaint and

the [defendant]'s alleged adverse decisions.").  But even if Plaintiff could demonstrate a

prima facie case of retaliation, the District has presented evidence that it limited Plaintiff's

cellphone after-hours use for a legitimate business reason; i.e., to avoid incurring overtime. Plaintiff presents no argument or evidence that the District's reasoning is pretextual.

## IV.     <u>CONCLUSION</u>

For the reasons set forth above,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.  The Clerk shall close the file.

IT IS SO ORDERED.

Dated:  8/21/17

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge